# SAMUEL & STEIN

## ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

**DAVID STEIN**
dstein@samuelandstein.com

May 5, 2020

ADMITTED IN
NY, NJ, PA, IL, DC

**VIA ECF**

Hon. Robert W. Lehrburger, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 1960
New York, NY 10007

> **Re:** **Juarez, et al. v. ABC Corp. d/b/a New University Deli, et al.**
> **Docket # 18-CV-10949 (JPO)**

Dear Magistrate Judge Lehrburger:

We represent named plaintiffs Miguel Juarez and Eduardo Catalan, as well as opt-in plaintiff Antonio Martinez, in the above-captioned matter and submit this letter to the Court with the consent of Youngsoo Choi., counsel for defendants, to report to the Court that the parties have reached an agreement to settle this matter, and so that the Court may assess and approve the settlement agreement. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

## Background

The named plaintiffs filed their complaint in this matter on November 22, 2018; the opt-in plaintiff joined the case on December 18, 2018. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the New York Labor Law for failure to pay the minimum wage, failure to pay "spread of hours" pay, failure to provide wage notices and failure to provide wage statements.

Specifically, plaintiffs alleged that they were employed at defendant's Manhattan deli as food preparers (the named plaintiff) and as a dishwasher (the opt-in plaintiff) from 2013 through 2018 (Mr. Juarez), from 2017 until the present (Mr. Catalan) and for six months in 2018 (Mr. Martinez). They each allege that they worked 6 days a week, between 55 and 60 hours per week. Nevertheless, they were not paid overtime; they were just paid fixed weekly salaries, ranging from $430 per week to $550 per week. They did not get paid premiums for working longer than ten-hour shifts, as Mr. Juarez and Mr. Catalan did. And they were paid in cash with no paystubs, or any other paperwork at any point during their employment.

Based on these factual allegations, plaintiffs' pay fell below the minimum wages that were in effect at relevant times, and defendants failed to pay any plaintiff the overtime premiums or spread of hours pay to which they were entitled. Assuming that plaintiffs prevailed at trial, they estimated their maximum damages as follows:

For Mr. Juarez, $198,000 in actual and liquidated overtime damages, $2,200 in actual and liquidated minimum wage damages, $29,000 for failure to pay spread of hours premiums, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or compliant paystubs — a total of $240,000. For Mr. Catalan, $71,000 in actual and liquidated overtime damages, $4,600 in actual and liquidated minimum wage damages, $3,500 for failure to pay spread of hours premiums, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or compliant paystubs — a total of $89,100. And for Mr. Martinez, $18,000 in actual and liquidated overtime damages, $4,800 in actual and liquidated minimum wage damages, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or compliant paystubs — a total of $32,800. Combined, therefore, the plaintiffs were owed roughly $362,000 plus attorneys' fees.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiffs' claims against defendants for a total of $95,000. (Each plaintiff will receive a share of this figure pro-rated based on the above estimated damage calculations, as specified in the Agreement.) While the final settlement amount is less than plaintiffs' maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants dispute the number of hours plaintiffs worked, as well as the salaries they were paid. Plaintiffs did not have any records of their own, and their calculations were based solely on their own recollections about their respective work histories. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. But that means that damages would have to be litigated at trial and would have come down to questions of credibility. Moreover, collectability was an issue even *before* coronavirus struck, and obviously would have presented an even bigger challenge now, if they had chosen to litigate this case to trial.

By agreeing to settle at this juncture, plaintiffs were able to gain a significant percentage of the damages they were potentially owed, without the delay of waiting for trial or the risks attendant with trial. Moreover, should defendants default, plaintiffs will be entitled to significantly more than the original settlement amount. Thus, plaintiffs decided to accept defendants' offer.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid

anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiffs suggest that they weigh in favor of settlement approval. The total settlement amount is 26% of plaintiffs' maximum possible recovery (and more than 100% of their maximum possible recovery under the FLSA alone). They will receive these funds without running any risk or having to prove their claims. Settlements resulting in a similar percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). And although this settlement agreement calls for installment payments, plaintiffs are protected by a confession of judgment for 150% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, **and because the settlement negotiations in this case were presided over by the Court, Your Honor has firsthand knowledge that the negotiations were conducted on an arm's length basis.** Moreover, prior to entering into the settlement agreement, plaintiffs, in consultation with counsel, thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. Plaintiffs no longer work for defendants (two of them having quit in 2018), so there is no risk they will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $1,472.35 (filing fee, service of process, subway fare, interpreter fees, and deposition costs)[1] and will retain ⅓ of the net settlement (i.e., an additional $31,175.88) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 1.55 times our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process are attached as Exhibit C.

multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 22.40 | $8,140.00 |
| David Nieporent | Senior Associate | $325 | 38.60 | $11,960.00 |
| **TOTAL** | | | **61.00** | **$20,100.00** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018), and Judge Oetken in *Zhu v. Salaam Bombay, Inc., et al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019). And in the Eastern District, where the rates are a bit lower, we have recently been awarded fees of $375 and $325 in wage and hour cases, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et al.*, 18-cv-182 (ARR), Docket Entry 13

---

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125. Travel time was billed, as per firm policy, at half the attorney's regular rate.

(E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* Docket Entry 14 (E.D.N.Y. Sept. 13, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

David Stein

Enc.

cc: Youngsoo Choi, Esq. (via ECF)